**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Ulana Kekish, individually and on behalf of all others similarly situated, | Case No. 7:21-cv-01562 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Whole Foods Market Group, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Whole Foods Market Group, Inc. ("defendant") manufactures, distributes, markets, labels and sells organic almondmilk coffee creamer under its 365 Everyday Value brand with a purported characterizing flavor of "Vanilla" ("Product").

2.    The front label representations include "Vanilla," "Naturally Flavored," a picture of the vanilla flower and three cured vanilla beans.



3.      The front label fails to disclose that the vanilla flavor was not from the ingredient of

vanilla or even natural flavors but from artificial flavors.[1] 21 C.F.R. § 101.22(i) (requiring

statements as to whether flavor is from the characterizing ingredient, natural flavor derived from

the ingredient, natural flavor from natural sources other than the ingredient or artificial sources).

4.      The ingredient is also required to disclose the presence of artificial flavor, but it does

not.

---

[1] The FDCA and its regulations are incorporated and adopted in New York Agriculture and Markets Law ("AGM")
and accompanying regulations. See Title 1, Official Compilation of Codes, Rules and Regulations of the State of New
York ("NYCRR"), 1 NYCRR § 259.1.

A.  Consumers Seek Natural Flavors

5.    Defendant knows that consumer preference is for foods without added flavors, since this means the flavor comes from the characterizing food ingredient.

6.    Where a food does not get all its flavor from a characterizing ingredient, consumers choose natural flavors, which are the extractives or essences from a fruit or vegetable and made through natural processes such as distillation, roasting, heating, enzymolysis or fermentation. 21 C.F.R. § 101.22(a)(3).

7.    Artificial flavors are the least desirable, because they are made from synthetic sources or through artificial processes. 21 C.F.R. § 101.22(a)(1) (all methods other than those permitted for natural flavors).

8.    These trends have caused demand for real vanilla to "steadily increase[e]…due to consumer demand for natural foods that are free of artificial ingredients."[2]

9.    According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring" from artificial flavors and non-vanilla sources.[3]

10.    At least seven out of ten consumers avoid artificial flavors because they believe the synthetic ingredients and harsh, non-natural processes are associated with detrimental health effects and lower nutrition.[4]

11.    Federal and state law reflect the consumers' right to know  the Product's front label to inform consumers that the Product contains artificial flavoring. 21 C.F.R. § 101.22(c).

---

[2] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?
[3] Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.
[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

B. Vanilla

12.    Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

13.    The vanilla orchid produces a fruit pod, the vanilla bean – pictured on the front label with the vanilla flower – which is the raw material for vanilla flavorings.



14.    The vanilla bean is heated in the sun for weeks, soaked in alcohol and its flavor constituents extracted (vanilla extract).

15.    Vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla flavor and is responsible for roughly one-third of the flavor and aroma.

16.    Vanillin is found in the form of its β-D-glucoside (glucovanillin) in green vanilla beans.

17.    The curing process, including the hydrolysis of its β-D-glucoside, leads to the release of vanillin from glucovanillin, at concentrations of 1-4% of dry weight of cured beans.

18.    Vanilla's unique flavor is due to the hundreds of odor-active compounds besides vanillin, such as acids, ethers, lactones, alcohols, acetals, phenols, esters and carbonyls.

19.    Methyl cinnamate and cinnamyl alcohol provide cinnamon notes.

20.     P-cresol contributes flavor notes described as woody and spicy.

21.     Acetovanillone provides a sweet, honey taste.

22.     P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

23.     4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral flavor notes.

II.  Two Types of Vanillin – Defendant Uses the Artificial Kind

24.     Since the isolation of vanillin from vanilla in the mid-1800s, there have been two types of vanillin.

25.     The first is natural vanillin from the vanilla plant.

26.     Natural vanillin is not isolated commercially since it is part of vanilla extract.

27.     The second is artificial vanillin from sources including guaiacol (coal tar or petroleum), eugenol (clove oil), ferulic acid and lignin (tree pulp), made through artificial processes. 21 C.F.R.§ 182.60 (listing vanillin as a "Synthetic flavoring substances and adjuvants.").

    i.     Vanillin from Guaiacol

28.     Guaiacol is the source of 85% of vanillin.

29.     It is obtained from the synthetic petrochemicals, benzene and propylene, whose industrial source is petroleum.

30.     Converting guaiacol to vanillin entails condensation with glyoxylic acid.

31.     The processes include chemical reactions such as decarboxylation and aromatic substitution.

5

32.    Vanillin from guaiacol is an artificial flavor because it is from an artificial source and undergoes artificial processes.

        ii.    <u>Vanillin from Lignin[5]</u>

33.    Vanillin is also derived from lignin, present in sulfite wastes of the wood pulp industry.

34.    These sulfite wastes contain chemicals used in the processing of wood pulp and are therefore not considered a natural source.

35.    Lignin is difficult to degrade by natural means and must be broken down either with sodium hydroxide, nickel or calcium hydroxide and simultaneously oxidized in the air in the presence of these chemical catalysts.

36.    When these chemical reactions are completed, the solid wastes and vanillin are removed from the acidified solution with a non-natural solvent, e.g., butanol or benzene, and reextracted with a sodium hydrogen sulfite solution.

37.    The vanillin is subjected to reacidification with sulfuric acid followed by vacuum distillation, and several recrystallization cycles before it's finished.

38.    Vanillin from lignin is an artificial flavor because the sulfite wastes of wood pulp are not a natural source, and the chemical reactions used to convert it to vanillin are not natural processes.

39.    Vanillin from lignin is an artificial flavor because its starting material is sulfite waste containing chemicals from the processing of wood pulp and are therefore not a natural source.

40.    Vanillin from lignin is an artificial flavor because it must be subjected to artificial processes in being converted to vanillin.

---

[5] Lignin is a class of complex organic polymers that form key structural materials in the support tissues of most plants.

iii.    Vanillin from Eugenol

41.    Eugenol, the major constituent of clove oil, is a source of vanillin.

42.    The first method of converting eugenol to vanillin requires isomerization of eugenol to isoeugenol under alkaline conditions, followed by side-chain cleavage to vanillin and two-carbon moiety under acidic conditions.

43.    The second method of converting eugenol to vanillin involves the intermediary of coniferyl alcohol which is oxidized to ferulic acid.

44.    The ferulic acid is subjected to high heat of 800 degrees Celsius, high amounts of pressure, 20 atmospheric pressure units, and chemical catalysts, sodium hydroxide or sodium chloride.

45.    Vanillin from eugenol is an artificial flavor because the high heat, high pressure and chemical catalysts are outside of what is considered a natural process for producing a natural flavor.

A.  Vanillin from Non-Vanilla is an Artificial Flavor

46.    Because the only natural vanillin is from the vanilla plant, vanillin from non-vanilla sources is artificial.

47.    The distinction between vanilla and non-vanilla flavors is discussed in regulatory correspondence and advisory opinions.[6]

48.    The FDA has stated it is misleading to label a food as "Vanilla" accompanied by the term "Naturally Flavored" with pictures of vanilla because this implies the food or beverage is

---

[6] John B. Hallagan and Joanna Drake, The Flavor Extract Manufacturer's Association (FEMA), "Labeling Vanilla Flavorings and Vanilla Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake").

naturally vanilla flavored even though the flavor is not from vanilla beans.

49.   The FDA stated:

the term "natural flavor" must not be used in such a way to imply that it is a "natural vanilla flavor", because it is not derived from vanilla beans. Furthermore, if the flavoring ingredient is being used in another food as "vanilla flavoring" and the flavoring was not derived from vanilla, and if the characterizing flavor of the food is vanilla, then the food must be identified as "artificially flavored."

Letter, Margaret-Hanna Emerick to Richard Brownell, February 25, 2016.

III. Ingredient List is Misleading

50.   Analytical testing of the Product in the fall of 2020 and/or winter of 2021 revealed it contains added vanillin.

51.   The added vanillin is the artificial version and not from vanilla beans because (1) the amount of vanillin was significantly greater than it would be if it were only present as *part* of any vanilla in the "Natural Flavor" ingredient, (2) the vanillin was unaccompanied by the expected amounts of other aromatic compounds from the vanilla plant and (3) the inability to produce vanillin at scale through methods which can be considered natural processes.

52.   For instance, the Product's flavoring failed to reveal detectable levels of methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, 4-methoxybnzaldehyde (p-anisaldehyde), 4-methyoxybenzyl alcohol (p-anisyl alcohol) and/or vanillic acid, even though these compounds were analyzed for.

53.   The absence of these compounds also means the Product contains, at most, a trace or de minimis amount of vanilla.

54.   The Product's ingredient list tacitly reveals it is not flavored exclusively with vanilla because it lists the generic ingredient "Natural Flavors" instead of vanilla extract.

55.   The ingredient list conceals the added artificial flavor of vanillin as part of the generic "Natural Flavors" instead of using the required, specific, non-generic name of the ingredient –

8

"vanillin" or "artificial flavor." 21 C.F.R. § 101.4(b)(1).



**INGREDIENTS:** ORGANIC ALMONDMILK (FILTERED WATER, ORGANIC ALMONDS), ORGANIC CANE SUGAR, ORGANIC COLD PRESSED VIRGIN COCONUT OIL AND/OR ORGANIC EXPELLER PRESSED PALM OIL, NATURAL FLAVORS, ORGANIC PEA PROTEIN, SEA SALT, SODIUM BICARBONATE, GELLAN GUM, ORGANIC GUAR GUM.

56.    Even if reasonable consumers were to investigate the "Vanilla" and "Naturally Flavored" statements on the Product's front label by scrutinizing the ingredient list on the back, consumers would still be unaware that the Product contained artificial flavor.

57.    According to labeling experts – but not reasonable consumers – "Brands that print phrases like 'natural vanilla' [or 'natural flavor'] on their packages may actually be pushing products that contain anything but."[7]

58.    Professor of Food Science, Scott Rankin, at the University of Wisconsin-Madison, explained that "the different wordings on the labels amount to an industry shorthand for specific kinds of natural or artificial flavorings."

59.    For instance, "natural vanilla flavor" often refers to "vanillin extracted from wood."

---

[7] Yahoo Food, The One Thing You Need to Know When Buying Vanilla Ice Cream, May 20, 2015 (though the discussion was centered on ice cream, the identification of ingredients is identical on ice cream or oat milk).

60.    "Natural flavor[s]," on the Product's ingredient list, "(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level)" and other flavorings that simulate vanilla.

61.    Defendant's "Natural Flavors" contains at most a trace of real vanilla with added artificial vanillin yet fails to disclose this separately as either "vanillin" or "artificial flavor" even though it is required to.

62.    Defendant adds artificial vanillin to give the Product a "sweet, creamy" taste that is associated with vanilla's taste.

63.    Vanillin's creamy taste has been described as "chemical-like" because it lacks the hundreds of flavor compounds in real vanilla.

64.    Although the flavoring used to simulate the Product's vanilla flavor is (1) not from vanilla beans, (2) from an artificial source and (3) made through artificial processes, Defendant pretends otherwise, conflating natural and artificial flavoring and deceiving consumers.

65.    The presence of added artificial flavor results in the Product lacking the expected vanilla taste because vanillin is not synonymous with vanilla, due to the absence of the critical odor-active compounds which together provide the flavor of vanilla.

66.    Even if the added artificial vanillin used in the Product was made from a natural source and through a natural process, the Product would still be required to state "artificially flavored" on the front label.

67.    Reasonable consumers must and do rely on defendant to honestly disclose the source of the Product's flavor.

68.    Consumers will see "vanilla" and a picture of vanilla and then expect the "Naturally Flavored" means naturally vanilla flavored when this is not true.

69.    Because the Product contains artificial flavor that "simulates, resembles or reinforces the characterizing flavor," the front label is required to state, "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

70.    The Product lacks the expected vanilla taste because added vanillin is not sufficient to replace what is provided from real vanilla from the vanilla plant.

71.    Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

72.    Defendant sold more of the Product and at a higher price than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

73.    Had plaintiff and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

74.    As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $3.89 for 16 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

### Jurisdiction and Venue

75.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

76.    Under CAFA, district courts have original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity.

77.    Plaintiff Ulana Kekish is a citizen of New York.

78.    Defendant Whole Foods Market Group, Inc. is a Delaware corporation or stock cooperative with a principal place of business in Austin, Travis County, Texas.

79.     Diversity exists because plaintiff Ulana Kekish and defendant are citizens of different states.

80.     Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

81.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here.

82.     Venue is further supported because many class members reside in this District.

### Parties

83.     Plaintiff Ulana Kekish is a citizen of Glen Spey, Sullivan County, New York.

84.     Defendant Whole Foods Market Group, Inc. is a Delaware corporation with a principal place of business in Austin, Texas, Travis County.

85.     Defendant is the largest organic grocery store in the United States, known for being a leader in organic, healthy and high-quality foods.

86.     Defendant operates close to 500 grocery stores in the United States and sells online through its parent company, Amazon.com, Inc.

87.     Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from one or more locations of Whole Foods Market, including at 300 Bergen Town Center, Paramus, NJ 07652, between December 2 and December 9, 2020, among other times.

88.     Plaintiff bought the Product at or exceeding the above-referenced price because she wanted to buy a product with the qualities and attributes represented herein and relied upon what the label indicated and/or omitted.

89.     The Product was worth less than what Plaintiff paid and she would not have paid as

much absent Defendant's false and misleading statements and omissions.

90.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labeling is consistent with its composition.

Class Allegations

91.    The class will consist of all purchasers of the Product who reside in New York, Rhode Island, Wyoming, Kansas, Utah and Ohio during the applicable statutes of limitations.

92.    Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

93.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

94.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

95.    Plaintiff is an adequate representative because her interests do not conflict with other members.

96.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

97.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

98.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

99.    Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

100.   Plaintiff incorporates by reference all preceding paragraphs.

101.   Plaintiff and class members desired to purchase products with the attributes highlighted by the labeling and marketing.

102.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

103.   Defendant misrepresented the Product through its statements, omissions, ambiguities, half-truths and/or actions.

104.   Defendant intended that Plaintiff and the Class rely upon Defendant's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

105.   Defendant knew or should have known that its representations about the Product's flavoring source were material and likely to mislead consumers.

106.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

107.   Plaintiff incorporates by reference all preceding paragraphs.

108.   The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that it possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and health-related attributes which it did not.

109.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

110.   This duty is based on Defendant's outsized role in the market for this type of Product.

111.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

112.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by regulators and consumers to its main office over the past several years regarding the Product.

113.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

114.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

115.   Plaintiff incorporates by reference all preceding paragraphs.

116.   Defendant had a duty to truthfully represent the Product, which it breached.

117.   This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

118.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

119.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

120.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

121. Plaintiff incorporates by reference all preceding paragraphs.

122. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

123. Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

124. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

125. Plaintiff incorporates by reference all preceding paragraphs.

126. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and

16

interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 22, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

17

7:21-cv-01562
United States District Court
Southern District of New York

Ulana Kekish, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Whole Foods Market Group, Inc.,

Defendant

## Class Action Complaint

Sheehan & Associates, P.C.
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: February 22, 2021

/s/ Spencer Sheehan
Spencer Sheehan